# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| NICOLE M. CASTRO, ) | Case No. CV 19-01026-AS |
| ) | |
| Plaintiff, ) | **MEMORANDUM OPINION AND** |
| ) | |
| v. ) | **ORDER OF REMAND** |
| ) | |
| ANDREW M. SAUL, Commissioner ) of the Social Security ) Administration,[1] ) | |
| ) | |
| Defendant. ) | |

For the reasons discussed below, IT IS HEREBY ORDERED that, pursuant to Sentence Four of 42 U.S.C. § 405(g), this matter is remanded for further administrative action consistent with this Opinion.

---

[1] Andrew M. Saul is now the Commissioner of the Social Security Administration and is substituted in for Acting Commissioner Nancy A. Berryhill in this case. See Fed.R.Civ.P. 25(d).

**PROCEEDINGS**

On February 11, 2019, Plaintiff filed a Complaint seeking review of the denial of her application for Disability Insurance Benefits. (Docket Entry No. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Docket Entry Nos. 11-12). On July 23, 2019, Defendant filed an Answer along with the Administrative Record ("AR"). (Docket Entry Nos. 17-18). On November 21, 2019, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions regarding Plaintiff's claim. (Docket Entry No. 26).

The Court has taken this matter under submission without oral argument. See C.D. Cal. L.R. 7-15.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On February 8, 2016, Plaintiff, formerly employed as an administrative assistant and receptionist (see AR 44-45, 147-52, 195-97), filed an application for Disability Insurance Benefits, alleging an inability to work because of a disabling condition since September 1, 2015. (See AR 126-27). The Commissioner denied Plaintiff's application, initially and on reconsideration. (AR 66-75). On November 1, 2017, Plaintiff, represented by counsel, testified at a hearing before Administrative Law Judge ("ALJ"), James Carberry, who also heard testimony from and vocational expert Ms. Cicero. (See AR 37-64).

On January 10, 2018, the ALJ issued a decision denying Plaintiff's application. (See AR 21-30). Applying the five-step sequential process, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since September 1, 2015. (AR 23). At step two, the ALJ determined that Plaintiff had the following severe impairments -- "degenerative disc disease status post cervical fusion, left shoulder degenerative joint disease, and fibromyalgia." (AR 24).[2] At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments.[3] (AR 25). The ALJ then assessed Plaintiff's residual functional capacity ("RFC")[4] and concluded that she could perform light work[5] with the following limitations:

---

[2] The ALJ found that Plaintiff's other impairments -- irritable bowel syndrome, migraines, depression, and anxiety – were nonsevere. (AR 24-25).

[3] The ALJ specifically considered whether Plaintiff's medically determinable physical impairments met the requirements of listings 1.02 (major dysfunction of a joint(s)), and 1.04 (disorders of the spine). The ALJ also considered whether Plaintiff's chronic pain syndrome met or was equivalent to any physical or mental impairment listing. (AR 25).

[4] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

>     [Plaintiff] can lift, carry, push and pull 20 pounds
>     occasionally and 10 pounds frequently; can stand and walk 2
>     hours out of 8 hours; can sit for 6 hours out of 8 hours; can
>     never climb ladders, ropes or scaffolds; can occasionally
>     climb ramps and stairs; can occasionally balance, stoop,
>     kneel, crouch and crawl; and can frequently reach overhead
>     and perform gross and fine manipulation.

(AR 25-28).

At step four, the ALJ determined that Plaintiff was able to perform past relevant work as an administrative assistant and receptionist as generally performed (AR 28-29), and therefore found that Plaintiff was not under a disability led within the meaning of the Social Security Act from the alleged disability onset date, September 1, 2015, to the date of the decision. (AR 29-30).

The Appeals Council denied Plaintiff's request for review on December 27, 2018. (See AR 5-9). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. See 42 U.S.C. §§ 405(g), 1383(c).

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine if it is free of legal error and supported by substantial evidence. See Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider

the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Id. As a result, "[w]here the evidence can reasonably support either affirming or reversing [the ALJ's] decision, [a court] may not substitute [its] judgment for that of the [ALJ]." Id. at 1010 (citations omitted).[6]

**PLAINTIFF'S CONTENTION**

Plaintiff alleges that the ALJ erred in rejecting Plaintiff's testimony about her symptoms and limitations. (See Joint Stip. at 4-12, 17-18).

**DISCUSSION**

After consideration of the record as a whole, the Court finds that Plaintiff's claim of error warrants a remand for further consideration.

**A. The ALJ Failed To Provide Clear and Convincing Reasons For Rejecting Plaintiff's Subjective Symptom Testimony**

Plaintiff asserts that the ALJ did not provide clear and convincing reasons for rejecting Plaintiff's testimony about her symptoms and limitations. (See Joint Stip. at 4-12, 17-18). Defendant asserts that the ALJ provided specific and permissible reasons for finding Plaintiff not fully credible. (See Joint Stip. at 12-17).

---

[6] The harmless error rule applies to the review of administrative decisions regarding disability. See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(An ALJ's decision will not be reversed for errors that are harmless).

5

1. <u>Legal Standard</u>

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis. <u>Trevizo v. Berryhill</u>, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. <u>Id.</u>, (citing <u>Garrison v. Colvin</u>, 759 F.3d 995, 1014-15 (9th Cir. 2014)). "In this analysis, the claimant is <u>not</u> required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." <u>Id.</u> (emphasis in original) (citation omitted). "Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof." <u>Id.</u> (citation omitted).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity. <u>Trevizo</u>, 871 F.3d at 678 (citation omitted); <u>see also</u> <u>Smolen</u>, 80 F.3d at 1284 ("[T]he ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."); <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). "This is not an easy requirement to meet: The clear and

convincing standard is the most demanding required in Social Security cases." Garrison, 759 F.3d at 1015 (citation omitted).

Where, as here, the ALJ finds that a claimant suffers from a medically determinable physical or mental impairment that could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate "the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities for an adult." Soc. Sec. Ruling ("SSR") 16-3p, 2017 WL 5180304, at *3.[1] SSR 16-3p superseded SSR 96-7p and eliminated the term "credibility" from the Agency's sub-regulatory policy. However, the Ninth Circuit has noted that SSR 16-3p

> makes clear what [the Ninth Circuit's] precedent already required: that assessments of an individual's testimony by an ALJ are designed to "evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms, and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.

Trevizo, 871 F.3d at 679 n.5 (quoting SSR 16-3p) (alterations omitted).

In discrediting the claimant's subjective symptom testimony, the ALJ may consider: "ordinary techniques of credibility evaluation, such as . . . prior inconsistent statements concerning the symptoms, and

---

[1] SSR 16-3p, which superseded SSR 96-7p, is applicable to this case, because SSR 16-3p, which became effective on March 28, 2016, was in effect at the time of the Appeal Council's December 27, 2018 denial of Plaintiff's request for review. Nevertheless, the regulations on evaluating a claimant's symptoms, including pain, see 20 C.F.R. §§ 404.1529 and 416.929, have not changed.

7

other testimony by the claimant that appears less than candid; unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and the claimant's daily activities." Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant. Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014); In addition, the ALJ may consider the observations of treating and examining physicians regarding, among other matters, the functional restrictions caused by the claimant's symptoms. Smolen, 80 F.3d at 1284; accord Burrell, 775 F.3d at 1137. However, it is improper for an ALJ to reject subjective testimony based "solely" on its inconsistencies with the objective medical evidence presented. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (citation omitted).

Further, the ALJ must make a credibility determination with findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation omitted); see Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) ("A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.") (citation omitted). Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by

substantial evidence, "it is not [the court's] role to second-guess it." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

2. <u>Plaintiff's Subjective Statements and Testimony</u>

Plaintiff made the following statements in an Exertion Questionnaire dated April 13, 2016 (<u>see</u> AR 160-62):

> She lives with her husband in a house. (AR 160).
>
> The symptoms that prevent her from carrying out a normal workday are difficulty sitting (she gets sharp pains if not careful with how she sits), difficulty retaining information, low energy, inability to follow through with tasks, and difficulty concentrating/keeping focus. (AR 160).
>
> On an average day, she showers, cleans her house, washes dishes, and runs errands, all of which make her feel extremely fatigued and ready for a nap. She does her own grocery shopping a couple of times a week. Cleaning her house, which includes straightening up, vacuuming, washing dishes, dusting, sweeping and mopping, takes her all day. She is able to do 15 to 20 minutes of housework before she needs a break due to pain. She can do gardening for 15 to 20 minutes before her back starts hurting and she needs to take a break; it may take her a couple of days to complete the gardening. Before becoming disabled, she was able to do these chores without becoming tired and losing interest. She is able to drive a car for 10 minutes from her house (under a doctor's orders) and comfortably for 15 to 20 minutes under other circumstances. (AR 160-62).
>
> When asked how far she walks and how long it takes her to walk that distance, she stated that, at this point, she does not exercise except for light yoga. She is not able to climb stairs. She is able to lift 5 to 10 pounds. She is able to carry a jug of milk to the grocery store counter or grocery cart. (AR 160-61).
>
> She sleeps for 5 to 6 hours a night. She requires a rest period or nap of 15 to 30 minutes during the day. She takes medications -- gabapentin, cyclebenzaprine, duloxetine, and hydrocodone – for her condition. She uses a brace as much as possible as a result of her spinal fusion surgery in February 2016. (AR 162)

Plaintiff gave the following testimony at the administrative hearing on November 1, 2017 (see AR 40-56, 58-62):

> She lives with her husband in a house. She does not have any children. She completed high school. She did not go to college; she went to a vocational dental school. She is 5 feet, 5 inches tall, and weighs approximately 168 pounds (she had lost 23 pounds). She worked in a dental office, but became allergic to the chemicals and the latex gloves (her doctor told her to find another profession). She last worked (through a temporary employment agency) in 2015 for two months as an administrative assistant at Innovative Bedding; she was "let go" (not fired) from that position because she got migraine headaches which caused her to vomit and urinate on herself, and because her severe pain caused her to be forgetful and to misunderstand things. Before working at Innovative Bedding, she worked (through a temporary employment agency) as an administrative assistant at the following businesses: Argo Spring, Cordova Bolt (where she also worked as a receptionist and was not able to function due to severe pain in her right arm and lower back), WTF Communications (the business shut down), All-Pro Precision (she left for a better job), and MGM Converters as a receptionist (the business shut down). When she worked as a receptionist and as an administrative assistant, she had to lift about 30 pounds. (AR 40-41, 43-47, 52-53, 55-56).

> She had her first surgery in November 2014 following longstanding shoulder pain which caused her sleep issues. After X-rays were taken, her doctors initially told her she had arthritis, and then Dr. Haffessey told her that she had fibromalgia. Following additional tests and an MRI, she had surgery, however, the surgery did not result in the relief she was looking for. (AR 49-50).

> She had her second surgery in February 2016. The second surgery also did not work, and maybe made things worse, because she is in constant pain. (AR 50).

> For her back, she walked, did physical therapy, put heat on (her lower back), and rode a stationary bike (approximately 7 minutes). (AR 42-43).

> She is unable to work as a receptionist because of her migraine headaches (she has to stay in bed), and her inabilities to sit, move around, file, do repetitive movements, and her need for naps. She gets migraine headaches lasting 1 to 3 days every other week. For relief, she lies down in a dark room, takes medication, tries to sleep, and uses an ice pack. She spoke to the neurologist who performed her surgeries about her migraine headaches

which became worse after the surgeries. She has never gone to the hospital as a result of her migraine headaches. (AR 54, 59-60-61).

She is unable to work in a factory or as a packer because she has a sharp pain when she does repetitive motions (such as picking up the phone or bending) or when she stretches her arm out (the pain makes her unable to think and to focus on the work), because she can only sit and stand for approximately 15 to 20 minutes, and because she can only lift 5 pounds. (AR 47-48).

For her back, she walked, did physical therapy, put heat on (her lower back), and rode a stationary bike (approximately 7 minutes). (AR 42-43).

She is able to walk for 15 to 20 minutes. She walks around the block (a huge block) of her house. She is able to lift 5 pounds. (AR 42).

She is able to drive (she drove to the hearing), but has some difficulty turning to her right so she generally does not drive on the freeway and does not drive much. She is able to fill the car with gasoline, but she does not do it much. She sometimes dresses herself (she dressed herself for the hearing). She is able to take showers, but she has pain, difficulty balancing, and difficulty putting her hands up on her head to wash her hair. She and her husband both do the shopping. She cooks dinner in the afternoon (for her husband), because she has to take a nap at some point. She tidies up around the house. Her husband takes out the trash, but she will do it if she has to. She does not travel because she does not have the money, and because it likely would be a waste due to her not feeling well. (AR 50-52, 54-55).

She sleeps about 4 or 5 hours a night because of insomnia, and takes about a 1 to 1 1/2 hour nap. She takes naps because of fatigue and pain. Her doctor gave her medicine for insomnia. (AR 58-59).

### 3. The ALJ's Credibility Findings

After briefly summarizing Plaintiff's testimony (see AR 26),[2] the ALJ stated: "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the above alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. Accordingly, these statements have been found to affect the claimant's ability to work only to the extent that they can reasonably be accepted as consistent with the objective medical and other evidence." (AR 26).

The ALJ then addressed Plaintiff's testimony as follows:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they

---

[2] The ALJ summarized Plaintiff's testimony as follows:

> The claimant testified that she has had two spinal surgeries. She stated that she stopped working because of migraine headaches that caused vomiting and urination. She stated that she cannot work because she cannot focus on anything except for her pain. She stated that she has pain in her shoulders and fibromyalgia. [¶] The claimant stated that she can walk 20 minutes and lift five pounds. She stated that she tried physical therapy and uses a stationary bike for about seven minutes. She stated that she can shop, cook, and do light cleaning. She stated that she can also pump gas. She stated that she needs to take naps during the day for up to two hours and does not sleep well at night.

(AR 26).

12

are inconsistent. The undersigned finds that the statements made by the claimant are not fully corroborated by the evidence and gives them weight accordingly. The claimant's activities of daily living indicate that the claimant is more functional than alleged. The claimant is able to perform some household chores, cook, drive, pump her own gas, watch television, read books, and go shopping [AR 291-301]. The claimant testified that she can walk up to 30 minutes a day and use a stationary bike. In February 2016, the claimant reported being able to walk four blocks and two flights of stairs without symptoms [AR 265]. The claimant also reported that swimming helped with her pain [AR 490]. There is no indication that the claimant performed these tasks with an assistive device or while not putting her arms overhead for a stroke. [¶] The medical evidence does not support the claimant's statements.

(AR 27).

After discussing the medical evidence in the record, including the opinions of Plaintiff's neurosurgeon and of consultative examiners (see AR 27-28), the ALJ stated: "The undersigned acknowledges that each individual has a different threshold with respect to pain symptoms. However, the undersigned must consider the consistency of the claimant's subjective complaints with the medical evidence, and in this case, the medical evidence does not support a finding that the claimant's functioning is so limited as to preclude all work." (AR 28).

13

4. <u>Analysis</u>

As set forth below, the ALJ failed to provide clear and convincing reasons for discrediting Plaintiff's testimony about the intensity, persistence and limiting effects of her pain and symptoms.[3]

First, the ALJ failed to "specifically identify 'what testimony is not credible and what evidence undermines [Plaintiff's] complaints.'" <u>Parra v. Astrue</u>, 481 F.3d 742, 750 (9th Cir. 2007)(quoting <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995)); <u>see</u> also <u>Smolen</u>, 80 F.3d at 1284 ("The ALJ must state specifically what symptom testimony is not credible and what facts in the record lead to that conclusion").

Second, the ALJ improperly discounted Plaintiff's testimony about her symptoms and limitations based on her ability to perform certain daily activities, such as doing some household chores, cooking, driving, pumping gas, watching television, reading books, shopping, walking up to 30 minutes, and using a stationary bike. "AlJs must be especially cautious in concluding that daily activities are inconsistent with [subjective symptom testimony], because impairments that would unquestionably preclude work and all the pressures of a workplace

---

[3] The Court will not consider reasons for discounting Plaintiff's subjective symptom testimony that were not given by the ALJ in the decision (<u>see</u> Joint Stip. at 13, 15-16, ). <u>See</u> <u>Connett v. Barnhart</u>, 340 F.3d 871, 874 (9th Cir. 2003)("We are constrained to review the reasons the ALJ asserts."; citing <u>SEC v. Chenery Corp.</u>, 332 U.S. 194, 196 (1947) and <u>Pinto v. Massanari</u>, 249 F.3d 840, 847-48 (9th Cir. 2001)); <u>Garrison v. Colvin</u>, 759 F.3d 995, 1010 (9th Cir. 2014)("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").

14

environment will often be consistent with doing more than merely resting in bed all day." Garrison, 759 F.3d at 1016. If a claimant's level of activity is inconsistent with the claimant's asserted limitations, it has a bearing on credibility. Id. "Though inconsistent daily activities may provide a justification for rejecting symptom testimony, the mere fact that a plaintiff has carried on certain daily activities does not in any way detract from her credibility as to her overall disability." Revels v. Berryhill, 874 F.3d 648, 667 (9th Cir. 2017) (citation and alterations omitted); see Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities does not in any way detract from her credibility as to her overall disability.") (citation and alterations omitted). Indeed, a claimant "does not need to be utterly incapacitated in order to be disabled." Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004) (citation omitted). Reddick, 157 F3d 715, 722 (9th Cir. 1998) ("Only if the level of activity were inconsistent with the Claimant's claimed limitations would these activities have any bearing on Claimant's credibility.").

While a plaintiff's ability to spend a "*substantial part*" of his or her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting may be sufficient to discredit him or her, here, there is no evidence that Plaintiff was spending a substantial part of her day engaged in these activities or that the physical demands of tasks such as doing some household chores, cooking, driving, pumping gas, watching television, reading books, and shopping were transferable to a work setting. See Ghanim v. Colvin, 763

15

F.3d 1154, 1165 (9th Cir. 2014)("However, there is no indication here that the limited activities Ghanim engaged in, often with the help of a friend, either comprised a 'substantial portion' of Ghanim's day, or were 'transferrable' to a work environment."). Here, the ALJ did not elicit any testimony at the hearing about the time and effort involved in Plaintiff's daily activities or make any determination about how Plaintiff's ability to engage in these activities would enable her to perform certain work functions or were inconsistent with her claimed functional limitations. For example, it is not clear whether the ALJ considered Plaintiff's statement that washing dishes, showering, cleaning house, and running errands makes her extremely tired and ready for a nap, that it takes her all day to clean the house, which included straightening up, vacuuming, washing dishes, dusting, sweeping and mopping, and that she can only do 15 to 20 minutes of housework before she needs a break due to pain, 15 or 20 minutes of gardening before she needs a break due to pain (see AR 161-62: Plaintiff's Exertion Questionnaire), drive for 15 to 20 minutes and only 10 minutes from her house, and that the heaviest thing she can carry when grocery shopping is a jug of milk (see AR 161: Plaintiff's Exertion Questionnaire) or Plaintiff's testimony at the hearing that she has difficulty driving and generally does not drive or pump gas, and tries to cook dinner in the afternoon because she has to take naps (see AR 51-52: Hearing Testimony) in determining the degree to which such daily activities were inconsistent with her testimony regarding her symptoms and limitations. See also Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999)("If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical

functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations.").

The ALJ's finding that Plaintiff's ability to walk and climb stairs was inconsistent with her claimed limitations was not a clear and convincing reason to discount her credibility. At the time of her February 2, 2016 preoperative visit, Plaintiff stated she was able to walk four blocks and two flights of stairs without symptoms. (AR 265). However, in the April 3, 2016 Exertion Questionnaire, Plaintiff stated she was not able to walk or climb stairs, and at the November 1, 2017 hearing (AR 160-61), Plaintiff stated she could walk only one huge block (which took about 15 to 20 minutes) (AR 42). Plaintiff's testimony was not inconsistent with her preoperative visit statement, because Plaintiff testified her condition worsened after the surgeries (AR 50).

The ALJ's finding that Plaintiff's testimony that she could not put her arms over her head (AR 51) was inconsistent with her statement to a doctor that swimming helped with pain and the lack of any indication in the record that Plaintiff swam strokes without putting her arms over her head, was not a clear and convincing reason for discounting Plaintiff's credibility. While Plaintiff told a pain management doctor on June 30, 2017 that swimming helped with fibromyalgia, Plaintiff also stated that her "pain is getting worse now." (AR 490). Moreover, there is no indication in the record about how or for how long Plaintiff swam, and the ALJ at the hearing did not ask Plaintiff about her swimming. Finally, swimming for therapeutic purposes may not have been inconsistent with Plaintiff's symptoms and limitations. See Vertigan v.

17

Halter, 260 F3d 1044, 1050 (9th Cir. 2001) ("A patient may do these activities [walking in the mall and swimming] *despite* pain for therapeutic reasons but that does not mean she could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved."); www.mayoclinic.org/diseases-conditions/fibromyalgia/diagnosis-treatment/drc-2035475 ("A physical therapist can teach you exercises that will improve your strength, flexibility and stamina. Water-based exercises might be particularly helpful.").

Third, while the ALJ also found there was a lack of objective medical evidence supporting Plaintiff's testimony concerning her symptoms and limitations, this factor cannot, by itself, support an adverse finding about Plaintiff's testimony. See Trevizo v. Berryhill, 871 F.3d 664, 679 (9th Cir. 2017)(once a claimant demonstrates medical evidence of an underlying impairment, "an ALJ 'may not disregard [a claimant's testimony] solely because it is not substantiated affirmatively by objective medical evidence.'"; quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)); see also SSR 16-3p, 2017 WL 5180304, *7 ("We must consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record. . . . However, we will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment related-symptoms alleged by the individual.").

Because the Court finds that the the ALJ did not discount Plaintiff's symptom testimony on legally permissible grounds, the Court is unable to defer to the ALJ's credibility determination. Cf. Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1464 (9th Cir. 1995)(the court will defer to the ALJ's credibility determinations when they are appropriately supported in the record by specific findings justifying that decision)(citations omitted).

**B.    Remand Is Warranted**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where, as here, the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate. McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); Harman v. Apfel, 211 F.3d at 1179-81.

Since the ALJ failed to properly assess Plaintiff's symptom testimony, remand is appropriate. Because outstanding issues must be resolved before a determination of disability can be made, and "when the record as a whole creates serious doubt as to whether the [Plaintiff]

is, in fact, disabled within the meaning of the Social Security Act," further administrative proceedings would serve a useful purpose and remedy defects. Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014)(citations omitted).

**ORDER**

For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: January 7, 2020

/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE